UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CORTEZ FIELDS,

    Plaintiff,

v.

Case No: 6:24-cv-1434-JSS-DCI

UNITED NETWORK FOR ORGAN
SHARING and ADVENTIST
HEALTH SYSTEM/SUNBELT, INC.,

    Defendants.
_____/

# ORDER

Defendants, United Network for Organ Sharing (UNOS) and Adventist Health System/Sunbelt, Inc., move to dismiss the amended complaint (Dkt. 42) filed by Plaintiff, Cortez Fields, for failure to state a claim. (Dkts. 48, 51.) Plaintiff opposes the motions. (Dkts. 56, 57.) Upon consideration, for the reasons outlined below, the court grants the motions in part and denies them in part.

## BACKGROUND[1]

The Organ Procurement and Transplant Network (OPTN) "maintain[s] a national registry for organ matching" in the United States. (Dkt. 42 ¶ 26.) UNOS operates the OPTN and accordingly "establishes and implements" policies and procedures as to "how donor kidneys will be awarded to patients with kidney disease."

---

[1] The court accepts the well-pleaded factual allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc). As discussed in this order, the court disregards the exhibits to Defendants' motions and considers only the amended complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint." (quotation omitted)).

(*Id.* ¶ 27.) Plaintiff claims that UNOS operates the OPTN pursuant to government contracts that provide UNOS with federal assistance in the form of grants or subsidies, rather than with compensation for goods or services. (*Id.* ¶¶ 27, 75–76; *see id.* ¶ 76 (noting that "UNOS's audited financial statements" classify the payments made to UNOS as grants); *id.* ¶ 77 ("[L]egislative history . . . confirms that the legislative intent behind the payments was not to purchase anything from UNOS[] but instead to provide financial assistance . . . .").) Indeed, Plaintiff pleads, UNOS does not provide any goods or services to the federal government. (*Id.* ¶ 75.) Adventist operates a transplant hospital in Orlando, Florida, that is affiliated with UNOS. (*See id.* at 1, 6.) Adventist regularly obtains Medicare funding and has received relief related to the coronavirus pandemic. (*Id.* ¶ 78.)

Plaintiff suffered from kidney disease for many years, (*id.* ¶ 5), and had been a patient with Adventist's hospital for approximately nine years in October 2023, (*id.* ¶ 16). In July 2022, he began treating his kidney disease through dialysis—a blood-filtration process that he underwent "during the day," "four times a week, for approximately five hours each time." (*Id.* ¶¶ 6–7, 66.) This treatment purportedly caused him significant damages, including medical expenses, other health problems, emotional distress, "great strain" in his family life, and "grave financial difficulties" due to his inability to work. (*Id.* ¶¶ 5, 7–10, 82.) During this time, Plaintiff states, he was on the waiting list for a kidney transplant at Adventist's hospital and was "biding his time and nursing his health until [Adventist] could find a match" for him. (*Id.*

¶¶ 11, 21.) However, Plaintiff allegedly endured a "prolonged wait for a kidney and related harms" because of his race, which he describes as Black. (*Id.* ¶¶ 12, 63.)

Plaintiff alleges that for "more than two decades," UNOS and Adventist used, and encouraged the use of, a "race-based coefficient" to "artificially increase" the estimated glomerular filtration rate (eGFR) scores "for Black kidney disease patients." (*Id.* ¶¶ 1, 80.) According to Plaintiff, these scores indicate patients' "observed kidney function." (*Id.* ¶ 1.) In February 2019, Adventist allegedly administered to Plaintiff an eGFR test with the language "eGFR African American" indicating use of the race-based coefficient. (*Id.* ¶¶ 58–59.) Plaintiff claims that use of the "coefficient delayed Black kidney disease patients," including him, "from being added to the kidney transplant" waiting list and "resulted in Black candidates waiting much longer for kidney transplants than similarly[ ]situated non-Black candidates." (*Id.*) Defendants' conduct regarding the coefficient has purportedly "resulted in non-Black patients receiving numerous kidneys that would otherwise have been given to Black applicants had their wait time been calculated without consideration of race." (*Id.* ¶ 48.) Plaintiff further states that use of the coefficient "relied solely on a defunct, eugenics-style racial stereotype" that "Black Americans . . . have greater muscle mass than non-Black Americans," as opposed to relying on "valid scientific or peer-reviewed studies." (*Id.* ¶ 2; *accord id.* ¶¶ 45–46.)

According to Plaintiff, in June 2022, UNOS "admitted the racially discriminatory nature of the race-based coefficient for Black Americans" and "approved a measure to require [Adventist and other operators of] transplant hospitals

to use a race-neutral calculation when estimating a patient's level of kidney function." (*Id.* ¶ 13 (quotation omitted); *accord id.* ¶¶ 49–50, 52.) However, Plaintiff claims, for "more than six months," UNOS "took no affirmative steps to adjust wait times" for Black Americans already on the kidney waiting list. (*Id.* ¶¶ 14, 53.) Plaintiff further claims: "In January . . . 2023, UNOS for the first time instructed [Adventist and other operators of] transplant hospitals to notify Black candidates of the . . . change [to race-neutral calculation] and [to] investigate whether Black members of their [waiting lists] were eligible for a wait time modification." (*Id.* ¶ 15; *accord id.* ¶ 54.)

Plaintiff alleges that he relied on Adventist to deal with UNOS on his behalf, (*id.* ¶ 85), because patients cannot apply directly to UNOS with regard to the kidney transplant waiting list but must instead apply through "an approved transplant hospital," (*id.* ¶¶ 28–29 (referring to Adventist and other transplant-hospital operators as UNOS's "gatekeepers" and "agents in dealing with kidney disease patients")). According to Plaintiff, Adventist did not ask UNOS to adjust Plaintiff's wait time until October 2023, when Adventist finally "admitted it used the race-based coefficient." (*Id.* ¶¶ 16, 61.) Plaintiff states that he "was never informed and was thus unaware" that Adventist had applied the race-based coefficient to his eGFR score thereby prolonging his wait for a kidney. (*Id.* at 5 n.2.) He reports that in December 2023, he received a kidney transplant at a hospital not operated by Adventist. (*Id.* ¶¶ 17, 65.)

The use of the race-based coefficient purportedly prolonged Plaintiff's dialysis thereby increasing the damages caused by the dialysis. (*See id.* ¶¶ 7–10, 12, 18, 66–71, 82–83, 88–89, 92–93.) Accordingly, in August 2024, Plaintiff initiated this action. (*See*

- 4 -

Dkt. 1.) In the operative amended complaint, he asserts three counts against Defendants: violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, against UNOS and Adventist (count one); breach of fiduciary duty against Adventist only (count two); and intentional infliction of emotional distress (IIED) against UNOS and Adventist (count three). (Dkt. 42 ¶¶ 72–93.) Plaintiff seeks compensatory and punitive damages in addition to legal fees. (*Id.* at 24.)

## APPLICABLE STANDARDS

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Generally, when analyzing a motion to dismiss for failure to state a claim, a court considers only the four corners of the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023).

## ANALYSIS

Defendants submit exhibits for the court's consideration on their motions to

dismiss and make arguments about each of the counts as well as Plaintiff's requested damages. (*See* Dkts. 48, 51.) The court considers these topics in turn.

### A. Defendants' Exhibits

Adventist invokes Federal Rule of Evidence 201 and asks the court to take judicial notice of over five dozen pages across ten exhibits. (Dkt. 48 at 2 n.2; *see* Dkts. 48-1 to 48-11.) *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction[] or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The court declines this request for the same reasons it denied Adventist's motion for judicial notice. (*See* Dkts. 70, 91.) Namely, the request "contradicts the Eleventh Circuit's characterization of the taking of judicial notice as 'a highly limited process' as well as the legal reasoning supporting this characterization," (Dkt. 91 at 4 (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc))); "the court is not convinced that the information of which Adventist requests judicial notice is 'not subject to reasonable dispute,'" (*id.* (quoting Fed. R. Evid. 201(b))); and "Adventist has not met its burden of establishing the relevance of each fact it asks the court to judicially notice," (*id.* (citing *Vallot v. Cent. Gulf Lines, Inc.*, 641 F.2d 347, 351 (5th Cir. 1981))).

Similarly, UNOS invokes the incorporation by reference doctrine and asks the court to consider the formal policy statement from the OPTN in effect in July 2022 on the subject of kidney allocation. (Dkt. 51 at 7 n.1; *see* Dkt. 51-1.) *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside

the four corners of the complaint may . . . be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."). Having reviewed the amended complaint, (*see* Dkt. 42), the court cannot conclude that the formal policy statement is central to Plaintiff's claims. *See Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1351 n.11 (M.D. Fla. 2023) ("[A] document is not 'central' merely because it is directly responsive to a factual allegation, but only when the plaintiff files a complaint based on a document that should have, in fairness, been attached to the complaint." (citing *Adamson v. De Poorter*, No. 06-15941, 2007 WL 2900576, at *3, 2007 U.S. App. LEXIS 23577, at *7–8 (11th Cir. Oct. 4, 2007))). Thus, in deciding Defendants' motions to dismiss, the court disregards Defendants' exhibits and considers only the amended complaint.

### B. Count One: Violation of Title VI

In count one, Plaintiff alleges Defendants violated Title VI by "engag[ing] in racial discrimination" while "receiv[ing] significant financial assistance from the federal government." (Dkt. 42 ¶¶ 74, 80.) As to the alleged discrimination, Plaintiff states that both Defendants "allowed and encouraged use of the race-based coefficient to artificially inflate" the eGFR scores for Plaintiff and other Black patients, that UNOS "adopt[ed], encourag[ed], and implement[ed] the race-based coefficient," and that Adventist "appl[ied] the race-based coefficient directly." (*Id.* ¶ 80.) Plaintiff further claims that Defendants "knowingly input and used . . . modified wait times for Black patients" that "caus[ed] Black patients to be ranked lower for specific donor kidneys than non-Black patients." (*Id.* ¶ 81.) As to the alleged receipt of financial

assistance, Plaintiff states that the federal government subsidizes approximately ten percent of UNOS's budget through grants, that UNOS does not provide any goods or services to the federal government and thus does not receive compensation for any such goods or services, and that Adventist receives Medicare funding and has received pandemic relief. (*Id.* ¶¶ 75–79.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance." 42 U.S.C. § 2000d. "To establish that a defendant is liable under Title VI . . . , a plaintiff must prove discriminatory intent." *Adams v. Demopolis City Schs.*, 80 F.4th 1259, 1273 (11th Cir. 2023). Only intentional discrimination, not disparate impact discrimination, is prohibited under 42 U.S.C. § 2000d. *See Alexander v. Sandoval*, 532 U.S. 275, 280–81, 285–86 (2001); *In re Wild*, 994 F.3d 1244, 1300 n.16 (11th Cir. 2021). Moreover, the Title VI plaintiff must establish that the defendant receives federal financial assistance. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003) ("[T]he text of Title VI . . . precludes liability against those who do not receive federal funding . . . .").

Adventist argues that Plaintiff's failure to allege that any of its employees had actual knowledge of intentional discrimination requires dismissal of count one, that allegations of disparate impact are insufficient, and that Adventist's receipt of Medicare funding and pandemic relief is "irrelevant . . . because the . . . Title VI claim[s are] based on [other] federal funding." (Dkt. 48 at 15–17.) Similarly, UNOS

asserts that Plaintiff alleges only disparate impact, not intentional discrimination, and that UNOS receives compensation through government contracts rather than federal financial assistance under Title VI. (Dkt. 51 at 8–17.) However, construed in the light most favorable to Plaintiff, *see Henley*, 945 F.3d at 1326, count one states a claim for relief against Defendants.

The count alleges that Defendants committed intentional discrimination—not disparate impact discrimination—when they knowingly used, and encouraged the use of, the race-based coefficient. (*See* Dkt. 42 ¶¶ 1–83.) The alleged use of the coefficient is not a facially race-neutral practice resulting in a disproportionate impact on Black patients; rather, it is a race-based practice. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) ("A racial classification, regardless of purported motivation, is presumptively invalid . . . ."); *Equal Emp. Opportunity Comm'n v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000) ("[D]isparate impact theory prohibits *neutral* . . . practices which, while non[]discriminatory on their face, visit an adverse, disproportionate impact on a statutorily[ ]protected group."). Moreover, Adventist has not furnished the court with any legal authority requiring Plaintiff to identify in his pleading an employee with actual knowledge, (*see* Dkt. 48 at 15–16), and the court is not aware of such a requirement. *See Gulisano v. Cohen*, 34 F.4th 935, 945 (11th Cir. 2022) (requiring parties to support assertions "with arguments and citations to authority"). Plaintiff sufficiently pleads Defendants' actual knowledge of the allegedly discriminatory conduct by stating that UNOS knew the coefficient's use was delaying transplants for Black patients and that Adventist not only administered tests with the

language "eGFR African American" but also admitted in October 2023 to its use of the race-based coefficient. (*See, e.g.*, Dkt. 42 ¶¶ 40–41, 59, 61.)

Further, as Plaintiff explains, (Dkt. 57 at 8–10), the federal financial assistance that Defendants receive need not relate to the alleged discrimination. *See PAS Commc'ns, Inc. v. U.S. Sprint, Inc.*, 112 F. Supp. 2d 1106, 1111 (D. Kan. 2000) ("[The p]laintiffs' failure to allege discrimination in connection with the specific program receiving federal funds is not fatal to their Title VI claim."). In addition, UNOS's argument that it receives compensation, not financial assistance, from the federal government contradicts Plaintiff's well-pleaded factual allegations. (*See, e.g.*, Dkt. 42 ¶¶ 74–77.) *See Henley*, 945 F.3d at 1326. In any event, determining whether a defendant receives federal financial assistance for Title VI purposes "requires inquiry into factual matters outside the complaint and, accordingly, is a matter better suited for resolution after both sides have conducted discovery on the issue." *PAS Commc'ns*, 112 F. Supp. 2d at 1111 (collecting cases).

Adventist presents the additional argument that count one should be dismissed for claim-splitting. (Dkt. 48 at 17–18.) According to Adventist, before Plaintiff initiated this case, his counsel filed a putative class action against UNOS under Title VI in another district, and although Plaintiff is not a named party in that case, he purportedly falls within the putative class. (*Id.*) The decision to grant or deny a dismissal based on claim-splitting is a matter committed to the court's sound discretion. *See Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 n.7 (11th Cir. 2021) ("review[ing] a dismissal for improper claim[-]splitting for an abuse of discretion"

- 10 -

(citing *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 837 (11th Cir. 2017))). In exercising this discretion, "the court analyzes (1) whether the case involves the same parties and their privies[] and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841–42 (quotation omitted). Here, the court agrees with Plaintiff that this case and the putative class action do not involve the same parties: "[Plaintiff] is pursuing his own individual claims distinct from the putative class." (Dkt. 57 at 13–14.) *See Robbins v. Gen. Motors de Mex., S. de R.L. de CV.*, 816 F. Supp. 2d 1261, 1264 (M.D. Fla. 2011) ("[T]he federal claim[-]splitting doctrine . . . requires identity of parties . . . ."). Moreover, "the doctrine of claim[-]splitting generally does not apply to class actions," which entail "representation in absentia." *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009). The court thus exercises its discretion to reject Adventist's claim-splitting argument.

In light of the above, the court denies Defendants' motions as to count one.

### C. Count Two: Breach of Fiduciary Duty

In count two, Plaintiff alleges that Adventist owed him fiduciary duties by virtue of operating the hospital where he was on the waiting list for a kidney transplant. (Dkt. 42 ¶ 85.) Plaintiff explains that "having no ability to communicate with UNOS or advocate for himself, [he] trusted and relied on [Adventist] to act in his best interests in obtaining for him a life-saving kidney." (*Id.*) He further alleges that Adventist breached its fiduciary duties to him by "engaging in racial discrimination against" him when it "fail[ed] to inform [him] of [its] use of the race-based coefficient to adjust his

eGFR score," "knowingly submit[ed] eGFR scores tainted by use of the race-based coefficient to UNOS . . . prejudicing [his] chances of receiving a donor kidney," and "failed for more than a year to recalculate [his] wait time" after UNOS "prohibited the use of the race-based coefficient." (*Id.* ¶¶ 86–87.)

"[T]o establish a breach of fiduciary duty under Florida law, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). Adventist focuses on the first element, contending that no fiduciary duty was owed to Plaintiff. (*See* Dkt. 48 at 18–20.) However, Florida law recognizes that a healthcare provider, such as Adventist, owes a duty to its patient not to "conceal[] facts known about harm done to the patient." *Langbehn v. Pub. Health Tr. of Miami-Dade Cnty.*, 661 F. Supp. 2d 1326, 1347 (S.D. Fla. 2009) (citing *Nardone v. Reynolds*, 333 So. 2d 25, 29 (Fla. 1976)). Adventist allegedly breached this duty when it concealed from Plaintiff that it applied the race-based coefficient to his healthcare given that the application of the coefficient harmed Plaintiff by worsening his chances of receiving a kidney. (*See* Dkt. 42 ¶¶ 85–87.) Additionally, count two plausibly alleges that damages flowed from this breach. (*See id.* ¶¶ 87–89.) The count therefore states a claim for relief.

### D. Count Three: IIED

Count three alleges that Defendants intentionally inflicted emotional distress on Plaintiff based on the use of the race-based coefficient, which purportedly constituted

racial discrimination and prejudiced his chances of receiving a donor kidney. (Dkt. 42 ¶¶ 90–92; *see* Dkt. 56 at 18 (asserting that "UNOS knowingly used a race-based coefficient, artificially increasing his eGFR score and prejudicing his ability to receive a kidney based only on the defunct stereotype that Black people have bigger muscles"); Dkt. 57 at 17–18 (summarizing Adventist's alleged misconduct).)

"Florida has adopted [section] 46 of the Restatement (Second) of Torts as the appropriate standard for IIED claims." *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)). "Section 46 states that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability.'" *Id.* (alteration adopted) (quoting Restatement (Second) of Torts § 46). The Eleventh Circuit has explained:

> [L]iability for IIED [under Florida law] requires that the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (alteration adopted and quotation omitted).

"The standard for 'outrageous conduct' is particularly high in Florida." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994) (citing *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)). "[T]he rendering of substandard medical care does not constitute the intentional infliction of emotional distress." *Gonzalez-Jiminez de Ruiz v. United States*,

378 F.3d 1229, 1231 (11th Cir. 2004) (quotation omitted). Further, intentional discrimination based on race does not, in and of itself, suffice to state an IIED claim. *See Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004). In *Williams*, the plaintiff alleged that his former employer "intentionally discriminated against him due to his African-American race." *Id.* According to the plaintiff, his former supervisor called him highly offensive racial slurs in his presence and over the work radio, allowed other employees to do the same, repeatedly referred to the plaintiff's race in a derogatory manner when telling him he was not wanted at work, "constantly and persistently threatened [him] with job termination for no apparent reason," and instructed another supervisor "to 'create a record' of false disciplinary . . . incidents for [the plaintiff] so as to justify [the plaintiff's] subsequent termination." *Id.* The plaintiff's supervisor also allegedly "directed [him] to load and/or unload aircraft in inclement and dangerous weather conditions, to move dangerous heavy equipment and cargo, and to work extra flights thereby 'eliminating' [the plaintiff's] break times." *Id.* Indeed, the discriminatory conduct alleged in *Williams* is too extensive to fully recount here. Nevertheless, the Florida appellate court concluded that although the complained-of misconduct was "reprehensible, objectionable, and offensive," it "did not rise to the level" required under Florida law for an IIED claim. *Id.*; *see Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. A federal court is bound

by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates." (citations omitted)).

In essence, count three alleges that Defendants intentionally discriminated against Plaintiff based on his race in a way that resulted in his receiving substandard medical care. (*See* Dkt. 42 ¶¶ 90–92; Dkt. 56 at 18; Dkt. 57 at 17–18.) This alleged misconduct does not satisfy the "particularly high" standard for IIED claims in Florida. *See Patterson*, 866 F. Supp. at 1383; *see also Gonzalez-Jiminez de Ruiz*, 378 F.3d at 1231; *Williams*, 877 So. 2d at 870. Consequently, the court grants Defendants' motions as to count three.

### E. Damages

The amended complaint contains a single prayer for relief, which appears at the end of the pleading and presumably applies to each count therein. (*See* Dkt. 42.) Through the prayer for relief, Plaintiff seeks compensation for his economic damages, medical expenses, personal injuries, pain, and suffering, in addition to punitive damages and legal fees. (*Id.* at 24.) Defendants assert that Plaintiff cannot recover punitive damages because such damages are not cognizable under Title VI and because Plaintiff does not sufficiently plead the requirements for such damages under Florida law. (Dkt. 48 at 23–24; Dkt. 51 at 20.) *See* Fla. Stat. § 768.72 (requiring a defendant's intentional misconduct or gross negligence for punitive damages). Adventist further maintains that Title VI does not permit compensation for personal injuries, pain, or suffering and that Plaintiff has not alleged a contractual or statutory basis for

recovering his attorney fees. (Dkt. 48 at 23–25.) Plaintiff responds that he does not base his requests related to personal injuries, pain, suffering, and punitive damages on Title VI but sufficiently supports these requests through his other claims. (Dkt. 56 at 19–20; Dkt. 57 at 19.) He also states that he bases his request for attorney fees on Title VI. (Dkt. 57 at 20.)

Although Plaintiff "may not amend his [c]omplaint in a response to a motion to dismiss," *Hoever v. Whitehead*, No. 3:23-cv-245-MMH-LLL, 2024 WL 3161822, at *3 n.3, 2024 U.S. Dist. LEXIS 111213, at *8 n.3 (M.D. Fla. June 25, 2024), he has abandoned any requests for compensation related to personal injuries, pain, and suffering and for punitive damages incorporated into count one, as well as any requests for attorney fees incorporated into counts two and three, (Dkt. 56 at 19–20; Dkt. 57 at 19–20). In any event, the court agrees with Defendants that Title VI does not allow Plaintiff to recover compensation for emotional distress (pain and suffering) or punitive damages. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022) ("[E]motional distress damages are not recoverable under [Title VI]."); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded in private suits brought under Title VI . . . ."); *Posey v. Atlanta Pub. Schs.*, 722 F. Supp. 3d 1350, 1363 (N.D. Ga. 2024) ("Title VI remedies do not include damages for pain and suffering[.]" (citation omitted)). The court also agrees with Plaintiff that Title VI permits recovery of attorney fees. *See* 42 U.S.C. § 1988(b) ("In any action . . . to enforce . . . [T]itle VI . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney[] fee as part of the costs . . . .").

Because Plaintiff sufficiently pleads Adventist's intentional misconduct in connection with count two, the court rejects Adventist's punitive damages argument concerning section 768.72. *See Irvine v. Cargill Inv'r Servs., Inc.*, 799 F.2d 1461, 1464 (11th Cir. 1986) (acknowledging that a claim for breach of fiduciary duty under Florida law could support the recovery of punitive damages). The court thus grants Adventist's motion in part and denies it in part as to Plaintiff's damages requests. The court grants UNOS's motion as to damages insofar as Plaintiff cannot recover punitive damages from UNOS through count one (because such damages are not cognizable under Title VI) and cannot recover any damages from UNOS through count two (because UNOS is not a defendant for count two) or through count three (because count three fails to state a claim).

## CONCLUSION

Accordingly:

1. Defendants' motions to dismiss (Dkts. 48, 51) are **GRANTED in part and DENIED in part** as explained in this order.

2. Defendants shall answer the amended complaint (Dkt. 42) on or before June 28, 2025.

**ORDERED** in Orlando, Florida, on June 18, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record