## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CORTEZ FIELDS,

               Plaintiff,

v.

UNITED NETWORK FOR ORGAN
SHARING and ADVENTIST
HEALTH SYSTEM/SUNBELT, INC.,
d/b/a ADVENTHEALTH ORLANDO,

               Defendants.

No. 6:24-cv-01434-JSS-DCI

Hon. Julie S. Sneed
Magistrate Daniel C. Irick

JURY TRIAL DEMANDED

## DEFENDANT UNOS'S ANSWER AND AFFIRMATIVE DEFENSES TO
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant United Network for Organ Sharing ("UNOS") hereby responds to

Plaintiff's First Amended Complaint ("FAC"), filed on September 27, 2024 (Dkt.

42), as follows:

## ANSWER

1. For more than two decades, UNOS and its affiliated transplant hospitals

used what is known as the race-based coefficient to artificially increase the observed

kidney function (eGFR) scores for Black kidney disease patients. The race-based

coefficient delayed Black kidney disease patients from being added to the kidney

transplant waitlist and resulted in Black candidates waiting much longer for kidney

transplants than similarly-situated non-Black candidates.

**ANSWER:** **The allegations of Paragraph 1 state legal conclusions to which no response is required. To the extent a response is required, UNOS admits that there were methods of calculating eGFR during the relevant timeframe that used a race-conscious coefficient in calculating eGFR scores. Except as expressly so admitted, the allegations in Paragraph 1 are denied.**

2.      Use of the race-based coefficient was not the result of any valid scientific or peer-reviewed studies. Instead, developers of the race-based coefficient postulated that Black Americans showed increased levels of creatinine extraction because they have greater muscle mass than non-Black Americans; i.e., they relied solely on a defunct, eugenics-style racial stereotype.

**ANSWER:** **UNOS denies the allegations in Paragraph 2.**

3.      Making medical policy based on racial stereotypes harmed all Black Americans waiting to receive a donor kidney. This lawsuit focuses on Mr. Cortez Fields.

**ANSWER:** **UNOS denies the allegations in Paragraph 3.**

4.      Mr. Fields worked as a manager at the Walt Disney Company in diversity planning and development and eventually earned a six-figure salary. He takes great pride in his years of hard work and career.

**ANSWER:** UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 and, therefore, UNOS denies such allegations.

5.     Mr. Fields was diagnosed with kidney disease many years ago. As a result of his disease and its complications, he was eventually unable to continue to advance his career.

**ANSWER:** UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 and, therefore, UNOS denies such allegations.

6.     Mr. Fields's kidney disease worsened to the point where, in July of 2022, he began dialysis. Dialysis is a treatment that removes waste and extra fluids from the blood when kidneys can longer do the job.

**ANSWER:** UNOS admits that Plaintiff initiated dialysis in July 2022. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 and, therefore, UNOS denies such allegations.

7.     Dialysis made it very challenging to maintain a normal life. Mr. Fields was on dialysis four times a week, for approximately five hours each time. He had to be awake during dialysis and therefore the treatment occurred during the day. Mr. Fields's wife helped him with the dialysis. Since Mr. Fields was dependent on his

wife to help with dialysis, and because dialysis took up a large portion of his day, this placed a great strain on his family. He was no longer able to travel and was forced to structure his days around his dialysis treatments. Being forced to do dialysis four times per week, for approximately five hours each session, caused Mr. Fields to miss out on spending valuable time with his family.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 and, therefore, UNOS denies such allegations.**

8.     Dialysis was simply too demanding for Mr. Fields to enjoy any semblance of a normal life. Mr. Fields experienced significant daily pain, had a massive loss of energy, and issues with his blood pressure and veins. Additionally, his diet was severely impacted as he had to limit his intake of water and protein.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and, therefore, UNOS denies such allegations.**

9.     From the moment he went on dialysis, Mr. Fields experienced emotional worry and stressed about his future.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and, therefore, UNOS denies such allegations.**

10.    Additionally, Mr. Fields experienced grave financial difficulties from no longer being able to work. Mr. Fields depleted his retirement savings to financially get by. This greatly impacted Mr. Fields's retirement plans and life goals.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and, therefore, UNOS denies such allegations.**

11.    Mr. Fields was on the organ-donor waitlist at AdventHealth Orlando— biding his time and nursing his health until either hospital could find a match.

**ANSWER: UNOS admits that Plaintiff was registered on the national kidney transplant waitlist by both AdventHealth Orlando and Tampa General. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11 and, therefore, UNOS denies such allegations.**

12.    The source of Mr. Fields's prolonged wait for a kidney and related harms? Defendants' use of the race-based coefficient to taint Mr. Fields's—and countless other Black patients'—eGFR scores. Defendants now admit these scores were artificially adjusted in a racist manner from the beginning.

**ANSWER: UNOS denies the allegations in Paragraph 12.**

13.    In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans. Thereafter, UNOS approved "a

measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained:

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[1]

**ANSWER:** **UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient. UNOS further admits that the quoted language appears in a press release published on June 28, 2022. Except as expressly so admitted, UNOS denies the allegations of Paragraph 13.**

14.    Despite prohibiting future use of the race-based coefficient, for six months, UNOS did nothing to adjust wait times for Black Americans already on the kidney waitlist.

**ANSWER: UNOS denies the allegations in Paragraph 14.**

---

[1] This Press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.

15.    In January of 2023, UNOS for the first time instructed transplant hospitals to notify Black candidates of the policy change and investigate whether Black members of their waitlists were eligible for a wait time modification. But UNOS only gave transplant hospitals *an entire year* to complete this process, until January of 2024.

**ANSWER: UNOS admits that on January 5, 2023, it announced a new OPTN policy that would require transplant hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments relating to previous use of the race-based coefficient, and a second notification confirming this process was completed and informing patients of their status. UNOS also communicated the OPTN directive that transplant hospitals investigate which patients are eligible for a wait time adjustment, and request said adjustments within a year, i.e., by January of 2024.  Except as expressly so admitted, UNOS denies the allegations of Paragraph 15.**

16.    At AdventHealth Orlando, Mr. Fields had been a patient for approximately 9 years. In October 2023, AdventHealth Orlando submitted a wait time adjustment request to UNOS, applying for Mr. Fields to receive a wait time adjustment. The lab test that AdventHealth Orlando attached in support of the

adjustment request indicated that, years earlier, AdventHealth Orlando had applied the race-based coefficient to Mr. Fields.[2]

**ANSWER: UNOS admits that Plaintiff was a patient at AdventHealth Orlando. UNOS further admits that AdventHealth Orlando submitted a wait time adjustment request to UNOS on behalf of Plaintiff in October 2023. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 and, therefore, UNOS denies such allegations.**

17.    After years of delay, Mr. Fields finally received a kidney transplant in December of 2023 at a different transplant hospital.

**ANSWER: UNOS admits that Plaintiff received a kidney transplant at Tampa General in December 2023. Except as expressly so admitted, UNOS denies the allegations of Paragraph 17.**

18.    Defendants' admitted discrimination against Black Americans by use of the race-based coefficient, at minimum, ruined Mr. Fields's life through years of delay and resulting debilitating dialysis treatments, rendering Mr. Fields unable to continue his previously successful career. There must be serious consequences for hospitals and transplant organizations that engage in such racist discrimination.

---

[2] Mr. Fields was never informed and was thus unaware that the race-based coefficient was applied to his eGFR score. Mr. Fields was further never informed and thus unaware that his accrual of wait time had been delayed by application of the race-based coefficient.

**ANSWER: UNOS denies the allegations in Paragraph 18.**

19.     Mr. Fields was and is a citizen of the State of Florida, who resides in Orlando, Florida.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and, therefore, UNOS denies such allegations.**

20.     Defendant UNOS is a Virginia nonprofit corporation with its principal place of business at 700 N 4th Street, Richmond, Virginia 23219.

**ANSWER: Admitted.**

21.     AdventHealth Orlando is a hospital engaged in the provision of health care and kidney transplantation services and is located at 2415 North Orange Avenue, Suite 700, Orlando, Florida 32804.

**ANSWER: UNOS admits that AdventHealth Orlando is a hospital engaged in the provision of health care and kidney transplantation services. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 and, therefore, UNOS denies such allegations.**

22.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because Mr. Fields asserts a federal cause of action

alleging racial discrimination. This Court further has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER: Paragraph 22 states legal conclusions to which no response is required.  To the extent a response is required, UNOS admits that Plaintiff's FAC contains a claim seeking recovery based on a federal cause of action but denies the remaining allegations in Paragraph 22.**

23.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Mr. Fields has been affected by Defendants' unlawful policies and procedures within this District. Each of the Defendants have transacted with Mr. Fields within the District, thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this District.

**ANSWER: Paragraph 23 states legal conclusions to which no response is required.  To the extent a response is required, UNOS admits that it manages the national waitlists for organ transplants consistent with its contractual requirements. UNOS also admits that certain candidates on the waitlist are Florida residents, including Plaintiff.  Except as expressly so admitted, and to the extent a response is required, UNOS denies the remaining allegations in Paragraph 23.**

24.    This Court has personal jurisdiction over UNOS because UNOS conducts operations within Florida by virtue of its management of the kidney donor

list for all patients residing within the State, including Mr. Fields. UNOS makes decisions as to which patients residing in Florida will be offered donor kidneys.

**ANSWER: Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, UNOS admits that it manages the national waitlists for organ transplants consistent with its contractual requirements. UNOS also admits that certain candidates on the waitlist are Florida residents, including Plaintiff. Except as expressly so admitted, and to the extent a response is required, UNOS denies the remaining allegations in Paragraph 24.**

25.    This Court has personal jurisdiction over AdventHealth Orlando because AdventHealth Orlando maintains its principal place of business within the State, and harmed Mr. Fields by virtue of the unlawful conduct alleged herein within this State.

**ANSWER: Paragraph 25 states legal conclusions to which no response is required. To the extent a response is required, UNOS lacks knowledge or information to form a belief as to the truth of allegations of Paragraph 25 and, therefore, UNOS denies such allegations.**

26.    In 1984, Congress passed the National Organ Transplant Act (NOTA), creating the Organ Procurement & Transplant Network ("OPTN"), which was tasked

with maintaining a national registry for organ matching. Per the Act, this registry was to be operated by a private, non-profit organization under federal contract.[3]

**ANSWER:** **UNOS admits that in 1984 Congress passed the National Organ Transplant Act, creating the OPTN. Answering further, the language of the referenced legislation speaks for itself. Except as expressly so admitted, and to the extent a response is required, UNOS denies the allegations in Paragraph 26.**

27.    Since that time, UNOS has acted as that private, non-profit organization which operates the OPTN. As its website declares, UNOS "[m]anag[es] the national transplant waiting list, matching donors to recipients 24 hours a day, 365 days a year." UNOS establishes and implements policy concerning how donor kidneys will be awarded to patients with kidney disease.

**ANSWER:** **UNOS admits that it holds the OPTN contract and that it manages the national waitlists for organ transplants consistent with its contractual requirements. Except as expressly so admitted, UNOS denies the allegations in Paragraph 27.**

28.    To be placed on the national kidney transplant waitlist, a patient must first visit one of 200+ transplant hospitals and receive a referral from his physician.

---

[3] Patients can also seek a kidney from a private donor, such as a family member or friend, at the same time as they wait for a kidney on the national waitlist.

In this way, transplant hospitals, like AdventHealth Orlando, serve as gatekeepers to patients seeking to be placed on the national kidney waitlist.

**ANSWER:** **UNOS admits that a patient must be registered on the national kidney transplant waitlist by a transplant center.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 28.**

29.    Transplant hospitals like AdventHealth Orlando serve as UNOS's agents in dealing with kidney disease patients. That is, UNOS is obligated to manage the national kidney waitlist, but put policies in place where it does not allow kidney disease patients to apply for inclusion on the kidney transplant waitlist directly through UNOS. Again, kidney disease patients must be referred by an approved transplant hospital.

**ANSWER: Paragraph 29 states legal conclusions to which no response is required.  To the extent a response is required, UNOS admits that a patient must be registered on the national kidney transplant waitlist by a transplant center. Except as expressly so admitted, UNOS denies the allegations in Paragraph 29.**

30.    The national kidney waitlist is maintained using UNOS software, known as UNet. When a new patient is added to the waitlist, the referring hospital enters the patient's name and relevant medical information, including patient race and eGFR scores, into the UNet software, which tracks patient medical information and wait time.

**ANSWER:** UNOS admits that transplant hospitals input certain patient information into UNet.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 30.**

31.    Each time a donor kidney becomes available, UNet's algorithm considers the information maintained in UNet, generates a list of potential matches, and ranks potential matches on the national kidney waiting list. These kidneys are then offered to patients through the transplant hospitals, like AdventHealth Orlando, in accordance with the UNet-generated rankings.

**ANSWER:** UNOS admits that the UNet system contains certain patient information.  UNOS further admits that the UNet algorithm generates a list of potential matches when a donor kidney becomes available and that donor kidneys may be offered to patients through transplant hospitals.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 31.**

32.    Upon information and belief, the primary factor considered by UNet's algorithm to rank candidates for potentially compatible kidneys is a patient's accrued wait time. In other words, UNet will identify patients that are a medical match for a particular available kidney, and then rank those patients according to wait time.

**ANSWER:** UNOS admits that a candidate's accrued wait time is one of several factors considered by UNet's algorithm in calculating ranking for kidney transplant recipients.  The OPTN Kidney Allocation Policy otherwise**

speaks for itself.  **Except as expressly so admitted, UNOS denies the allegations in Paragraph 32.**

33.    Importantly, referral to the waitlist does not automatically start the clock on qualifying wait time. To accrue qualifying wait time, either a patient's eGFR score must fall below 20 ml/min or the patient must begin dialysis.

**ANSWER: UNOS admits that referral to the waitlist does not automatically qualify a patient to begin accruing qualifying wait time.  As for how a patient may begin to accrue qualifying wait time, the OPTN Kidney Allocation Policy speaks for itself.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 33.**

34.    UNOS is responsible for enacting policy that determines which patients receive which donor kidneys. In this regard, UNOS offers as one of its strategic goals to "[p]rovide equity in access to transplants[.]" UNOS has fallen far short of its stated goal.

**ANSWER: UNOS admits that one of its strategic goals is to provide equity in access to transplants. Except as expressly so admitted, UNOS denies the allegations in Paragraph 34.**

35.    Until earlier in 2024, the UNOS and OPTN boards were identical, meaning that the combined UNOS/OPTN board was the entity that voted on and

approved policies appearing in the OPTN policy manual, including those governing allocation of kidneys.

**ANSWER:** **UNOS admits that the UNOS Board of Directors was composed of the same members as the OPTN Board of Directors until 2024. Except as expressly so admitted, UNOS denies the allegations in Paragraph 35.**

36.    For decades, the race-based coefficient was applied to artificially inflate eGFR scores for Black Americans. Both of the commonly administered eGFR tests included the race-based coefficient, one of 16% and the other 21%, based upon the underlying assumption that Black Americans have greater muscle mass and thus naturally have more creatinine in their bodily systems.

**ANSWER:** **UNOS denies the allegations in Paragraph 36.**

37.    As noted above, patients do not begin accruing wait time on the national kidney waitlist until their eGFR score reaches 20 ml/min. But for Black patients, even when their unadjusted eGFR score fell below 20 ml/min, the race-based coefficient artificially inflated their eGFR scores above 20 ml/min, preventing them from qualifying to accrue wait time. Thus, Black patients' eGFR scores had to fall well below 20 ml/min before they began to accrue wait time.

**ANSWER:** **UNOS denies the allegations in Paragraph 37.**

38.    This practice led to many Black kidney disease patients never qualifying for wait time by eGFR score because their addition to the waitlist was

delayed until the patients had to start dialysis (which is recommended when kidney function falls below 15 ml/min).

**ANSWER: UNOS denies the allegations in Paragraph 38.**

39.    UNOS's agent transplant hospitals, including AdventHealth Orlando, also had a policy of applying the race-based coefficient to Black patients' eGFR scores. Because the transplant hospitals are required by UNOS to measure and provide patients' eGFR scores, this conduct by the transplant hospitals is within the scope of their agency.

**ANSWER: UNOS denies the allegations in Paragraph 39.**

40.    UNOS at all times knew its agent transplant hospitals were using the race-based coefficient, and despite its authority to ban the practice, as evidenced by the rules passed in 2022 and 2023, did nothing to stop the transplant hospitals for more than two decades. Indeed, it was UNOS that created the policy which set 20 ml/min as the cutoff point to accrue wait time with knowledge that the tests in common usage to test eGFR included the race-based coefficient.

**ANSWER: UNOS denies the allegations in Paragraph 40.**

41.    UNOS knew at all relevant times that the transplant hospitals' use of the race-based coefficient resulted in delayed referrals and accrual of wait time for Black kidney disease patients, as the transplant hospitals entered the impacted data into UNOS's UNet program. With knowledge that its UNet program was full of race-

based coefficient-impacted wait time data, UNOS knowingly and intentionally used that race-based coefficient impacted data when running its algorithm to determine to whom to offer a kidney.

**ANSWER: UNOS denies the allegations in Paragraph 41.**

42.    The above shows a policy and practice of use of the race-based coefficient directly by UNOS. Again, UNOS's UNet system was full of eGFR scores that incorporate the race-based coefficient-impacted wait time calculations, and those wait time calculations are weighed heavily within the UNet algorithm in determining which patients will be awarded a donor kidney. Moreover, UNOS at all times knew that its UNet system was full of race-based coefficient-impacted data such that UNOS's decision to use that data in its algorithm was a conscious decision to itself use the race-based coefficient.

**ANSWER: UNOS denies the allegations in Paragraph 42.**

43.    UNOS is also liable for the transplant hospitals' use of the race-based coefficient. UNOS enacted policies and bylaws that required transplant hospitals to act as its agents in referring patients to the waitlist and gathering relevant medical information from patients, tasks UNOS itself would otherwise be required to do. UNOS knew for decades that its transplant hospitals were using the race-based coefficient on UNOS's behalf, could have banned transplant hospitals from doing

so, but failed to do so, despite knowledge that the race-based coefficient is discriminatory against Black patients.

**ANSWER: The allegations of Paragraph 43 state legal conclusions to which no response is required. To the extent a response is required, UNOS denies the allegations in Paragraph 43.**

44.    AdventHealth Orlando applied the race-based coefficient to eGFR scores and entered the modified eGFR scores into UNOS's UNet system. AdventHealth Orlando also acted as UNOS's gatekeeper to the national kidney waitlist, refusing to make referrals for Black kidney disease patients that would have a qualifying eGFR score but for use of the race-based coefficient. This practice delayed Mr. Fields from being added to the waitlist and accruing wait time.

**ANSWER: UNOS denies the allegations in Paragraph 44.**

45.    There has never been any serious scientific research to support use of the race-based coefficient to artificially increase Black patients' eGFR scores. Instead, the race-based coefficient is based on eugenics-style racism and stereotypes that assume Black Americans are more physically fit than White Americans and other racial groups.

**ANSWER: UNOS denies the allegations in Paragraph 45.**

46.    This, of course, is junk science supported only by racial stereotypes, and not any valid scientific studies. As described in an article titled *Systemic Kidney*

*Transplant Inequities for Black Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the theory supporting the race-based modification to Black patients' eGFR scores has "not been substantiated by rigorous scientific evidence[.]"

**ANSWER: UNOS states that the language of the referenced article speaks for itself. UNOS denies the remaining allegations in Paragraph 46.**

47.     Use of the race-based coefficient seriously diminishes Black patients' chances of receiving a donor kidney. Indeed, because of this eGFR manipulation, many Black patients never qualified to accrue wait time because of their eGFR score, and only began to accrue wait time when they began dialysis.

**ANSWER: UNOS denies the allegations in Paragraph 47.**

48.     The above-described practices have resulted in non-Black patients receiving numerous kidneys that would otherwise have been given to Black applicants had their wait time been calculated without consideration of race.

**ANSWER: UNOS denies the allegations in Paragraph 48.**

49.     In June of 2020, UNOS acknowledged the racial inequity plaguing the transplant system and the need for reform. In an article found at https://unos.org/news/racial-equity-in-transplantation/, UNOS professed a "commitment" to "saving and improving lives through transplantation, regardless of

background, including race and ethnicity." But the race-based coefficient would remain in effect for years to come.

**ANSWER:** **UNOS states that the language of the referenced article speaks for itself. UNOS denies the remaining allegations in Paragraph 49.**

50.     In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans, approving "a measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained that:

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[4]

**ANSWER:** **UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient. UNOS further admits that the quoted language appears in a press release published on June 28, 2022. Except as expressly so admitted, UNOS denies the allegations in Paragraph 50.**

---

[4] This Press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.

51.    UNOS posted the following passage on its website:



Organ donors        Patients

**What are other issues with the race variable in eGFR?**

EGFR calculations rely on a binary approach to race. When the race variable is used in formulas, eGFR calculators only offer two response options: "Black" or "Not Black."

These options do not include a designation for mixed race or multi-racial individuals, and do not account for the existing genetic diversity within the Black population. The concept of race is a social construct and an unreliable proxy for genetic difference, therefore not a biological marker or clinical measure.

**ANSWER: UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient. UNOS further admits that the quoted language appears on its website. Except as expressly so admitted, UNOS denies the allegations in Paragraph 51.**

52.    UNOS's policy officially changed on July 27, 2022, with UNOS's policy prior to that time expressly allowing for use of the race-based coefficient to artificially increase Black patients' eGFR scores.

**ANSWER: UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from**

submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 52.

53.    Nonetheless, UNOS continued to use the race-based coefficient as a default. For more than six months, UNOS took no affirmative steps to adjust wait times and correct for previous use of the race-based coefficient.

**ANSWER: UNOS denies the allegations in Paragraph 53.**

54.    On January 5, 2023, UNOS announced a new policy that would require donor hospitals to provide two notifications to patients on the national kidney adjustments where the race-based coefficient delayed their accrual of wait time, and a second notification confirming this process was completed and informing patients of their status. UNOS also directed donor hospitals to investigate which patients were eligible for a wait time adjustment, and to request said adjustments with UNOS within a year, i.e., by January of 2024.

**ANSWER: UNOS admits that on January 5, 2023, it announced a new OPTN policy that would require transplant hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments relating to previous use of the race-based coefficient, and a second notification confirming this process was completed and informing patients of their status.  UNOS also**

**communicated the OPTN directive that transplant hospitals investigate which**

**patients are eligible for a wait time adjustment, and requested said adjustments**

**within a year, i.e., by January of 2024.  Except as expressly so admitted, UNOS**

**denies the allegations in Paragraph 54.**

55.     While this adjustment in policy rightfully acknowledged the racially

discriminatory nature of the race-based coefficient, it lacked the requisite urgency,

and for many of the 27,500 Black Americans then on the national kidney waitlist,

like Mr. Fields, the policy change was too little too late. During the 18 months of lag

time in adjusting wait times, Black Americans continued to suffer a race-based

disadvantage in their candidacy for a donor kidney, with UNet continuing to utilize

the old, improperly calculated wait times when awarding kidneys.

**ANSWER: UNOS denies the allegations in Paragraph 55.**

56.     Indeed, as discussed below, Mr. Fields experienced serious pain,

financial distress, and emotional distress near the end of the time period provided by

UNOS for transfer hospitals to correct their wait time calculations, that could have

been avoided had Defendants moved faster.

**ANSWER: UNOS lacks knowledge or information sufficient to form a**

**belief as to the truth of the allegations regarding Plaintiff's health in 2023 and,**

**therefore, UNOS denies such allegations.   UNOS denies the remaining**

**allegations in Paragraph 56.**

57.    Had the race-based coefficient not been applied to Mr. Fields's eGFR score—put another way, had Mr. Fields not been Black,—he would have been eligible to accrue wait time at an earlier date than when AdventHealth Orlando first registered him for the waitlist.

**ANSWER: UNOS denies the allegations in Paragraph 57.**

58.    Mr. Fields underwent an eGFR test at AdventHealth Orlando in February of 2019.[5]

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 and, therefore, UNOS denies such allegations.**

59.    This test listed his "eGFR African American"—indicating AdventHealth Orlando's use of the race-based coefficient—on February 16, 2019. His race-adjusted eGFR score was 21 ml/min.

**ANSWER: UNOS admits that the lab report attached to the wait time modification form submitted by AdventHealth Orlando on behalf of Plaintiff listed his "eGFR African American" as "22."  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining**

---

[5] As stated above, Mr. Fields was unaware that AdventHealth Orlando was applying the race-based coefficient against Mr. Fields, that this application resulted in a different kidney function score because of his race, or that he was receiving healthcare treatment different from that of a non-Black patient.

allegations contained in Paragraph 59 and, therefore, UNOS denies such allegations.

60.    But if he had not been Black, AdventHealth Orlando would not have adjusted his eGFR score because of his race, and his eGFR would have been 18 ml/min. This score would have qualified Mr. Fields to join the waitlist and begin accruing wait time.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to AdventHealth Orlando's eGFR policy at the time. UNOS denies the remaining allegations in Paragraph 60.**

61.    AdventHealth Orlando admitted it used the race-based coefficient many years later, in October 2023. After UNOS failed, for decades, to ban use of the race-based coefficient, it finally reversed course and commanded its agent donor hospitals to stop applying the race-based coefficient, and to evaluate whether the Black patients on the list would have been listed earlier, had they not been Black.

**ANSWER: UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient. UNOS admits that on January 5, 2023, it announced a new OPTN policy that would require transplant hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black**

**Americans will be considered for wait time adjustments relating to previous use of the race-based coefficient, and a second notification confirming this process was completed and informing patients of their status. UNOS also communicated the OPTN directive that transplant hospitals investigate which patients are eligible for a wait time adjustment, and requested said adjustments within a year, i.e., by January of 2024. Except as expressly so admitted, UNOS denies the allegations in Paragraph 61.**

62.    As a result of UNOS's delayed ban and overdue correction policy, AdventHealth Orlando submitted a wait time adjustment application on Mr. Fields's behalf to UNOS, in October of 2023. AdventHealth Orlando attached to the application the test from February 2019 that artificially increased Mr. Fields's "eGFR African American" score.

**ANSWER: UNOS admits that AdventHealth Orlando submitted a waiting time modification form to UNOS on behalf of Plaintiff in October 2023. UNOS admits that that waiting time modification form attached a lab result from February 2019. Except as expressly so admitted, UNOS denies the allegations in Paragraph 62.**

63.    Put simply, because Mr. Fields is Black, AdventHealth Orlando admittedly (and wrongfully) applied the race-based coefficient to Mr. Fields. That wrongful act, based only on Mr. Fields' race, caused Mr. Fields to endure an

unnecessarily prolonged wait for placement on the organ waitlist, and to also endure an unnecessarily prolonged wait for a donor kidney.

**ANSWER: The allegations in Paragraph 63 are not directed at UNOS and, therefore, no response is required.  To the extent the allegations in Paragraph 63 are deemed directed at UNOS, UNOS denies such allegations.**

64.    Until Mr. Fields' wait time was finally corrected, UNOS had been processing race-based-coefficient-tainted eGFR scores for Mr. Fields and other Black patients, and using those scores to make waitlist determinations that directly affected Mr. Fields.

**ANSWER: UNOS denies the allegations in Paragraph 64.**

65.    While on the waitlist at AdventHealth Orlando, a doctor recommended to Mr. Fields that he attempt to join the waitlist at another transplant hospital because he could potentially receive a kidney transplant there sooner. Mr. Fields thankfully received a kidney transplant from that other hospital in December 2023.

**ANSWER: UNOS admits that Plaintiff received a kidney transplant at Tampa General in December 2023.  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 65 and, therefore, UNOS denies such allegations.**

66.    But until he received that transplant, Mr. Fields underwent dialysis four times a week, for approximately five hours each session. He had to be awake during

dialysis and therefore the treatment occurred during the day. Mr. Fields's wife helped him with the dialysis.  Since he was dependent on his wife to help with dialysis and because dialysis takes up a large portion of his day, this placed a great strain on his family. He was unable to travel and was forced to structure his days around his dialysis treatments. Being forced to do dialysis four times a week for approximately five hours each session caused Mr. Fields to miss out on spending valuable time with his family.

**ANSWER:** **UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 and, therefore, UNOS denies such allegations.**

67.    The treatment was unpleasant and drained Mr. Fields's physical and mental energy.

**ANSWER:** **UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 and, therefore, UNOS denies such allegations.**

68.    Mr. Fields was unable to resume his six-figure-income career and instead was forced to rely on his retirement savings to make ends meet while also sacrificing future career advancement by way of anticipated promotions.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 and, therefore, UNOS denies such allegations.**

69.    Mr. Fields's kidney disease required him to go through a litany of expensive, unpleasant medical procedures, resulting in physical pain, an inability to work or enjoy life, and severe emotional distress.

**ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 and, therefore, UNOS denies such allegations.**

70.    Even though Mr. Fields has survived his kidney transplant, Mr. Fields must still contend with the additional wait time caused by use of the race-based coefficient that he will never get back.

**ANSWER: UNOS denies the allegations in Paragraph 70.**

71.    This would have all been avoided had Defendants not discriminated against Mr. Fields.

**ANSWER: UNOS denies the allegations in Paragraph 71.**

72.    Mr. Fields re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

**ANSWER: UNOS restates and incorporates herein by reference its responses to Paragraphs 1-71 above.**

73.    This cause of action is brought by Mr. Fields against both Defendants.

**ANSWER:  UNOS admits that Plaintiff has brought this cause of action against both Defendants.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 73.**

74.    UNOS and AdventHealth Orlando receive significant financial assistance from the federal government.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to whether AdventHealth Orlando receives "significant financial assistance from the federal government" and, therefore, UNOS denies such allegations.  UNOS denies the remaining allegations in Paragraph 74.**

75.    In this regard, approximately 10% of UNOS's budget is provided by the Federal government, in accordance with the National Organ Transplant Act's authorization of $7,000,000/year to fund a private, non-profit entity such as UNOS.  These contracts were intended by the federal government to act as a subsidy to UNOS, not as compensation for any goods or services provided by UNOS to the federal government, for which there are none.

**ANSWER:  UNOS admits that it receives certain funds from the Federal Government in exchange for services UNOS performs pursuant to a federal procurement contract.  Except as expressly so admitted, UNOS denies the allegations in Paragraph 75.**

76.     Moreover, UNOS's audited financial statements describe this federal government payment as a "Grant" and include a corresponding "Federal Assistance Lending Number." Upon information and belief, this number relates to federal government "Assistance Listings" which, pursuant to the federal government-run SAM.gov, "are detailed public descriptions of federal programs that provide grants, loans, scholarships, insurance, and other types of assistance awards."

**ANSWER: UNOS's audited financial statements speak for themselves. Except as expressly so admitted, UNOS denies the allegations in Paragraph 76.**

77.     The legislative history also confirms that the legislative intent behind the payments was not to purchase anything from UNOS, but instead to provide financial assistance:

- Rep. Pallone stated, "this legislation will provide critical funding to ensure the OPTN has resources it needs to continue to perform its valuable services to our Nation." 154 Cong. Rec. H8668-01, 2008 WL 4329712, at *H8669.

- Rep. Burgess stated, "This bill increases the authorized funding for the Organ Procurement and Transplantation Network, which has not been increased since 1984. The Organ Procurement and Transplantation Network provides coordination between individuals in need of an organ transplant and donor organs made available from deceased donors. I support the increased authorization levels for the program, which currently represent only 7 percent of the operating cost for this valuable resource." *Id.* at *H8670.

- Rep. Jackson-Lee stated, "It is time to help patients, all across the country, in need of lifesaving transplants of not just the kidney, but also heart, liver, lung and other vital organs." *Id.*

**ANSWER:** The legislative history speaks for itself. Except as expressly so admitted, UNOS denies the allegations in Paragraph 77.

78.    AdventHealth Orlando receives significant financial assistance from the federal government and its programs, funding both patient care and other related operations. As just two examples, AdventHealth Orlando receives federal funding through its operations as a Medicare provider, and received federal COVID-19 relief.

**ANSWER:** UNOS lacks knowledge or information sufficient to form a belief as to allegations in Paragraph 78 and, therefore, UNOS denies such allegations.

79.    Patients with end-stage renal disease on the waitlist at Medicare-certified hospitals like AdventHealth Orlando are eligible for Medicare coverage regardless of their age.

**ANSWER:** UNOS lacks knowledge or information sufficient to form a belief as to allegations in Paragraph 79 and, therefore, UNOS denies such allegations.

80.    Defendants have engaged in racial discrimination. As alleged in detail above, Defendants allowed and encouraged use of the race-based coefficient to artificially inflate Black patients', including Mr. Fields's eGFR scores, with UNOS adopting, encouraging, and implementing the race-based coefficient, and AdventHealth Orlando applying the race-based coefficient directly, thus delaying

Mr. Field's accrual of wait time, and prejudicing his chances of receiving a donor kidney.

**ANSWER: UNOS denies the allegations in Paragraph 80.**

81.    Defendants further knowingly input and used these modified wait times for Black patients in UNOS's UNet software, causing Black patients to be ranked lower for specific donor kidneys than non-Black patients. Even after UNOS admitted the practice was racially discriminatory, Defendants failed to take prompt action to ensure Black patients' (including Mr. Fields's) wait times were recalculated.

**ANSWER: UNOS denies the allegations in Paragraph 81.**

82.    The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Mr. Fields's award of a donor kidney. This discrimination also caused Mr. Fields to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs, and lost wages stemming from an inability to resume work because of additional dialysis treatments and other resulting medical conditions caused by application of the race-based coefficient by Defendants.

**ANSWER: UNOS denies the allegations in Paragraph 82.**

83.    The above-described racial discrimination caused additional damages including but not limited to pain and suffering, severe emotional distress and

accompanying stress about the future, constant fatigue, the inability to travel, and the loss of enjoyment of life.

**ANSWER: UNOS denies the allegations in Paragraph 83.**

84.    Mr. Fields re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

**ANSWER: UNOS restates and incorporates herein by reference its responses to Paragraphs 1-83 above.**

85.    As the transplant hospitals for Mr. Fields, AdventHealth Orlando owed Mr. Fields a fiduciary duty. AdventHealth Orlando acted as an intermediary between Mr. Fields and the market for donor kidneys, similar to how a stockbroker operates for his clients' benefit in the financial markets. Mr. Fields, having no ability to communicate with UNOS or advocate for himself, trusted and relied on AdventHealth Orlando to act in his best interests in obtaining for him a life-saving kidney.

**ANSWER: The allegations in Paragraph 85 are not directed at UNOS and, therefore, no response is required.**

86.    AdventHealth Orlando breached its fiduciary duty by engaging in racial discrimination against its fiduciary.

**ANSWER: The allegations in Paragraph 86 are not directed at UNOS and, therefore, no response is required.**

87.    Specifically, AdventHealth Orlando breached its fiduciary duty by failing to inform Mr. Fields of their use of the race-based coefficient to adjust his eGFR score, and knowingly submitting eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in the UNet algorithm, prejudicing Mr. Fields's chances of receiving a donor kidney. Even after UNOS changed course and prohibited the use of the race-based coefficient, AdventHealth Orlando failed for more than a year to recalculate Mr. Fields's wait time.

**ANSWER: The allegations in Paragraph 87 are not directed at UNOS and, therefore, no response is required. To the extent any of the allegations in Paragraph 87 are deemed directed at UNOS, UNOS denies such allegations.**

88.    The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Mr. Field's award of a donor kidney. This discrimination also caused Mr. Fields to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs and lost wages stemming from an inability to resume work because of additional dialysis treatments and other resulting medical conditions caused by application of the race-based coefficient by Defendants.

**ANSWER: The allegations in Paragraph 88 are not directed at UNOS and, therefore, no response is required. To the extent any of the allegations in Paragraph 88 are deemed directed at UNOS, UNOS denies such allegations.**

89.    The above-described breach of fiduciary duty caused additional damages including but not limited to pain and suffering, severe emotional distress and accompanying stress about the future, constant fatigue, the inability to travel, and the loss of enjoyment of life.

**ANSWER: The allegations in Paragraph 89 are not directed at UNOS and, therefore, no response is required.**

90.    Mr. Fields re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

**ANSWER: UNOS restates and incorporates herein by reference its responses to Paragraphs 1-89 above.**

91.    Defendants' conduct, as described in this Complaint, can only be described as so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

**ANSWER: The Court has dismissed Plaintiff's IIED claim and, thus, no response is required.  To the extent a response is required, UNOS denies the allegations in Paragraph 91.**

92.    Defendants' extreme and outrageous conduct, intentionally and/or recklessly caused Mr. Fields the harms and damages described herein, including severe emotional distress.

**ANSWER: The Court has dismissed Plaintiff's IIED claim and, thus, no response is required. To the extent a response is required, UNOS denies the allegations in Paragraph 92.**

93. The above-described outrage caused additional damages including, but not limited to, pain and suffering and severe emotional distress resulting in a looming fear of death, constant fatigue, the inability to travel, and the loss of enjoyment of life.

**ANSWER: The Court has dismissed Plaintiff's IIED claim and, thus, no response is required. To the extent a response is required, UNOS denies the allegations in Paragraph 93.**

## PRAYER FOR RELIEF

UNOS denies that Plaintiff is entitled to any of the relief requested in his Prayer for Relief.

All other allegations and averments contained in Plaintiff's FAC not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

UNOS hereby alleges the following separate and distinct defenses and affirmative defenses to the FAC and causes of action asserted against UNOS therein, without assuming the burden of proof on matters as to which it has no such burden.

## FIRST AFFIRMATIVE DEFENSE

(Lack of Standing)

Plaintiff does not have standing to bring his claims against UNOS.

## SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE

(Failure to Mitigate Damages)

Plaintiff failed to take proper and reasonable steps to avoid, minimize, or mitigate Plaintiff's alleged damages and, to the extent of such failure, the damages allegedly incurred by Plaintiff, if any, should be reduced accordingly or eliminated entirely.

## FOURTH AFFIRMATIVE DEFENSE

(Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff is estopped by the action of law or by conduct from maintaining the FAC filed in this case.

## SIXTH AFFIRMATIVE DEFENSE

### (Fault of Others)

If Plaintiff suffered or sustained any loss, injury, damage, or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, or intervening acts of other third parties, and not by UNOS.

## SEVENTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

UNOS alleges that any damages or loss Plaintiff may have incurred as a result of any act or conduct by UNOS would be speculative at best and, thus, too uncertain for recovery.

## EIGHTH AFFIRMATIVE DEFENSE

### (Compliance with Law)

UNOS met or exceeded the requirements of applicable laws, regulations, and standards.

## NINTH AFFIRMATIVE DEFENSE

(Good Faith Conduct / Conformance with Applicable Standards)

UNOS at all times acted in good faith and in conformance with all applicable government and industry standards, rules, and regulations and thus its actions were taken for legitimate, non-discriminatory reasons.

## TENTH AFFIRMATIVE DEFENSE

(Waiver)

Plaintiff's claims against UNOS, if any, are barred by the doctrine of waiver.

## ELEVENTH AFFIRMATIVE DEFENSE

(Excessive Penalties)

The Due Process clause of the Fifth Amendment of the United States Constitution and the Due Process provision of the Fourteenth Amendment of the United States Constitution prohibit the excessive imposition of damages disproportionate to UNOS's alleged culpability, the relationship between the harm alleged and the penalty, actual damages (if any), and UNOS's ability to pay.

## TWELFTH AFFIRMATIVE DEFENSE

(Assumption of Risk / Contributory Negligence)

All or a portion of Plaintiff's claims are barred by the doctrines of assumption of risk and/or contributory negligence.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Lack of Causation)

Defendant UNOS did not proximately cause or contribute to the injuries alleged by Plaintiff.

## OTHER AFFIRMATIVE DEFENSES

UNOS hereby expressly reserves the right to assert additional defenses prior to trial.

## PRAYER FOR RELIEF

WHEREFORE, UNOS prays for judgment as follows:

1.      That judgment be entered in favor of UNOS;

2.      That Plaintiff take nothing by way of his FAC and the claims asserted therein;

3.      That the FAC, and the claims against UNOS, be dismissed with prejudice;

4.      That UNOS be awarded its costs incurred in the defense of this action; and

5.      That UNOS be granted such other relief as the Court deems just and proper.

Dated: June 27, 2025                          Respectfully submitted,

                                              */s/ Marilyn G. Moran*
                                              Marilyn G. Moran
                                              Florida Bar No. 0163813
                                              Madonna M. Snowden
                                              Florida Bar No. 124522
                                              FORDHARRISON LLP
                                              300 S. Orange Avenue, Suite 1300
                                              Orlando, FL 32801
                                              Tel.: (407) 418-2310
                                              Fax.: (407) 418-2327
                                              mmoran@fordharrison.com
                                              msnowden@fordharrison.com

                                              Daniel M. Blouin (admitted *pro hac vice*)
                                              Thomas G. Weber (admitted *pro hac vice*)
                                              WINSTON & STRAWN LLP
                                              35 W. Wacker Drive
                                              Chicago, IL 60601-9703
                                              Tel.: (312) 558-5600
                                              Fax: (312) 558-5700
                                              dblouin@winston.com
                                              tgweber@winston.com

                                              *Counsel for Defendant United Network for
                                              Organ Sharing*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 27, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this action.

Dated: June 27, 2025                    */s/ Marilyn G. Moran*
                                         Local Counsel for UNOS